PLANTERS' LUMBER CO. *v.* GRIFFIN CHAPEL M. E. CHURCH
*et al.*

(Division B. Nov. 11, 1929. Suggestion of Error Overruled Nov. 25,
1929.)

[124 So. 479.]

(Division B.. May 5, 1930.)

[128 So. 76. No. 28506.]

See, also, 124 So. 479.

**Butler & Snow**, of Jackson, for appellant.

716

Will E. Ward, of Starkville, for appellees.

Magruder, Walker & Magruder, of Starkville, for appellees.

**Griffith, J.,** delivered the opinion of the court.

Waiving the informalities of the application, as for instance that it is not verified or supported by affidavit, 4 C. J., p. 511, 2 Ency. Pl. & Pr., pp. 310-311, it shows no other facts than the following: That the final decree was rendered on September 5, 1929; that appeal bond was filed and approved on the same day; and that the transcript has not been filed in this court. It is not shown, for instance, whether the record is to come with or without a stenographic transcript, and since by far the greater number of records do come with the stenographic transcript as a part thereof, we cannot assume that this is an unusual, rather than a usual, case in that respect. Under the law, the official stenographer has sixty days to transcribe his notes, to which fifteen days are added for the examination by counsel on both sides of that transcript, sections 596 and 597, Hemingway's Code 1927; and these periods have not yet elapsed.

When an application is made for a writ of certiorari, all the facts essential to establish the right of the applicant thereto must be shown; and an order therefor can no more be made where a part of the essential facts must be supplied by mere inferences which do not necessarily follow from the other facts stated than can any other order be made by a court upon that kind of an insufficient

foundation. The motion is therefore overruled, but without prejudice to a renewal thereof at the proper time and on a proper definite showing of the essential facts.

Motion overruled.

ON SUGGESTION OF ERROR.

ON APPLICATION FOR WRIT OF CERTIORARI.

**Anderson, J.,** delivered the opinion of the court.

In the opinion handed down, the question whether the application for a writ of certiorari should have been sworn to was not decided, but expressly waived. The only question decided was whether the application for the writ stated all the facts essential to establish the right thereto. The opinion held that it did not. We will add this to what we said in the opinion.

The application should have set out whether the cause was coming up to this court on the pleadings and the judgment of the court alone, or, in addition thereto, on evidence taken by the court reporter, if the trial was had on evidence, and, if the latter, that the court reporter had transcribed and filed his notes of the evidence with the clerk of the court a sufficient length of time before the application for the writ to enable the clerk, with reasonable diligence, to copy and certify the record up to this court. In other words, it was the duty of appellant to show in the application that there had been unreasonable delay on the part of the clerk in making and certifying the record up to this court.

Suggestion of error overruled.

ON THE MERITS.

**Anderson, J.,** delivered the opinion of the court.

Appellant, a corporation under the laws of this state, filed its bill in the chancery court of Oktibbeha county,

against appellees, the Griffin Chapel Methodist Episcopal Church and the People's Savings Bank, the former a religious corporation under the laws of this state, and the latter a banking corporation under the laws of this state, both domiciled in the city of Starkville, Oktibbeha county; and the Board of Home Missions and Church Extensions of the Methodist Episcopal Church, a corporation under the laws of the state of Pennsylvania, and a nonresident of this state. (For convenience, hereafter the Griffin Chapel Methodist Episcopal Church will be referred to as the church; the Board of Home Missions and Church Extensions of the Methodist Episcopal Church as the board of home missions; and the People's Savings Bank as the bank.) The purpose of appellant's bill was to collect from the church a balance due for materials and labor furnished by appellant in the construction of the church building in the city of Starkville; and to that end establish a mechanic's and materialman's lien on the church building and lot, and have such lien declared superior and paramount to the mortgage liens of the board of home missions and of the bank; and for a sale of said property to pay such indebtedness.

Appellees answered separately, denying the material allegations of the bill, and there was a trial on bill, answers, and proofs, resulting in a decree establishing appellant's indebtedness against the church in the sum of one thousand five hundred fifty-six dollars and sixty-six cents, and fixing a lien on the church building and lot for the payment of same, but subordinating appellant's lien to the mortgage liens of both the board of home missions and the bank. The decree ordered a sale of the property, the proceeds thereof to be applied accordingly. From that decree appellant prosecutes this appeal.

On November 10, 1925, George Thomas entered into a contract in writing with the church, by the terms of which Thomas was to furnish the materials and labor, and erect on a lot in the city of Starkville, owned by the church,

a church building, in accordance with plans and specifications furnished by the church, for which the church agreed to pay him the sum of twelve thousand dollars; eight hundred dollars of which was to be paid in cash, and eighty-five per cent of the materials and labor going into the building to be paid between the first and tenth of each month, the balance to be paid upon completion of the building. The contract provided that on the failure of the church to make the payments promptly when due, the contractor should have the right to enforce his mechanic's and materialman's lien against the church building and lot for the amount due him.

Soon after the execution of the building contract, Thomas entered into a contract with appellant, by the terms of which appellant was to furnish him the materials used in the construction of the church building, and advance him money to meet his pay rolls. In consideration of which agreement Thomas assigned to appellant the proceeds of his contract with the church, and authorized the church to pay all amounts coming due thereunder to appellant. Appellant further guaranteed the faithful performance of the contract by Thomas. Immediately after the execution of the building contract, Thomas assembled the necessary materials on the ground, furnished by appellant, and began the construction of the building; which was completed according to contract, and the church paid appellant therefor the sum of twelve thousand dollars, the price provided for in the contract, there remaining unpaid only the "extras."

During the progress of the work certain changes and additions were made which were provided for in the contract. These are referred to in the evidence as "extras," and were agreed upon by the church, the contractor, and appellant, as the work progressed. The court, in its decree, found the balance due appellant for these extras to be one thousand five hundred fifty-six dollars and sixty-six cents.

Section 1, chapter 150, Laws of 1926, section 2580, Hemingway's Code of 1927, provides, among other things, that every house, building, or structure of any kind, shall be liable for the debt contracted and owing for labor done or materials furnished about the erection of the building, and such debt shall be a lien on the building and the lot on which it is situated, when located in a municipality.

The board of home missions held a "trust bond and mortgage" on the church lot and building, executed on the 24th day of September, 1925, which was recorded in the office of the clerk of the chancery court of Oktibbeha county on the 28th day of December, 1925. This trust bond and mortgage was, therefore, prior in date and recording to the building contract. Its purpose was to secure the return by the church to the board of home missions of the sum of three thousand dollars, under certain conditions named therein, which will hereafter be more fully set out.

On the 26th day of March, 1926, the church executed a mortgage to the bank to secure the sum of five thousand dollars, part of which had already been advanced by the bank to the church, and the balance was afterwards advanced for the purpose of paying for the church building.

The three liens were, therefore, in this order as to their dates; that of the board of home missions was first; appellant's was second; and the bank's was third. There is no question of priority of liens as between the board of home missions and the bank, because the former, by written contract, in order to induce the bank to lend the five thousand dollars to the church, agreed that the bank's mortgage should be superior to that of the board of home missions.

There are two questions in the case; one is whether appellant's materialman's and mechanic's lien on the church lot and building is prior in right to that of the board of home missions; and the other is whether it is

prior in right to that of the bank. We will consider these questions in the order stated.

Appellant argues several grounds, on each of which it contends that its lien is prior in right to that of the board of home missions. The view we take renders it necessary to discuss only one of the grounds—that is, in substance, that the trust bond and mortgage of the board of home missions had never been breached, and, therefore, the church was not indebted to the board of home missions. The pertinent part of the trust bond and mortgage is in this language:

"Whereas, the said party of the second part has granted aid to the amount of three thousand dollars ($3,000),

"Now, therefore, this indenture witnesseth: That the said party of the first part, in consideration of the above amount, does for itself and its successors, hereby covenant, grant, promise and agree to and with the said party of the second part, and does hereby become bound unto said party as follows: That in case the said party of the first part shall cease to be connected with the methodist Episcopal Church, or the corporate existence of the said party of the first part shall cease, or the house of worship is alienated or the premises herein described is alienated, then and in such case the said party of the first part, shall and will forthwith refund to the said party of the second part, the successors or assigns thereof, the said amount with interest thereon of five per cent from the time of receiving it."

Following that is a provision that if the church shall cease to be connected with the Methodist Episcopal Church, or the corporate existence of the church shall cease, or its church property be alienated, then the money advanced by the board of home missions shall become due and payable to it, and the church property shall be security therefor. It further recites that the money was being advanced to aid the church in constructing a church building.

On the trial the evidence showed that only two thousand of the three thousand dollars was actually advanced by the board of home missions.

The question is whether the covenant in the trust bond and mortgage against alienation of the church property should be construed to cover involuntary, as well as voluntary, alienation.

The evidence showed that the board of home missions advanced the two thousand dollars to the church for the purpose of assisting in erecting the church building; and that the advances were made in February, July, and August, 1926, and June, 1927, with full knowledge of appellant's building lien. If a creditor of the church should recover a judgment against it, and, to satisfy the judgment, have the church property sold under execution, would the trust bond and mortgage at once become an absolute mortgage for the return of the two thousand dollars advanced? Would the purchaser at the execution sale take the property subject to the trust bond and mortgage? We think Montroy v. Phillips, 134 Miss. 345, 98 So. 775, is decisive of this question in favor of appellant's contention. There the testator devised land to his son for life, but prohibited him from selling it, or incumbering it with a lien of any kind, unless such sale be made by, or such incumbrance be in favor of, one or more of the other devisees named in the bill. The son, the life tenant, was declared a bankrupt under the Federal Bankruptcy Act. The trustee in bankruptcy brought suit to have the court determine whether or not the land should be subjected to the bankrupt's debts. The court held that if the testator had intended that the property devised should not be subject to the payment of the debts of the devisee, he could, and should, have used the language necessary to express such intent; that the provision in the will meant that the devisee could not *voluntarily* sell or incumber the property except to one of the other devisees; that the right of the creditors to go

against the property for their debts arose by operation of law, and that the "liability or lien against the property was *involuntary,* which the testator did not see fit to provide against." The decision in that case was merely a reiteration of the well-established principle that the law does not hamper, but encourages, the free and voluntary alienation of property, and that the right of alienation must be strictly construed against those attacking such right.

The trust and bond mortgage provides against *voluntary* alienation, and not against *involuntary* alienation. The advance of two thousand dollars by the board of home missions to the church was purely a gift, unless there was a voluntary alienation of the church property; and then, and not until then, it was to become a debt, the payment of which was secured by the mortgage. There may never be a voluntary alienation of the property secured by the mortgage. Until there is a voluntary alienation, the property may be subjected to the debts of the church, as if no mortgage, in fact, existed. And if that should result in an involuntary alienation of the property, the purchaser will take it free from the mortgage.

We think the court was justified, upon the evidence, in finding the following facts bearing on the question of the priority of liens as between appellant and the bank, and it must have so found—otherwise the decree would have been in appellant's favor, instead of the bank's.

About the time, or shortly before, the building contract was entered into between the church and Thomas, it was understood between the bank and the church that the former was to advance to the latter the sum of five thousand dollars, to be used as part payment for the church building to be constructed, and that the bank was to have a first lien on the church building and lot. to secure the five thousand dollars. The contractor. Thomas, knew this, and so did appellant, the assignee of the contractor.

The contractor proceeded with the erection of the church building until somewhere about the middle of March, 1926, when the church had fallen behind in its monthly payments in the sum of about three thousand eight hundred dollars. The work was then stopped by the contractor and appellant, until the church could arrange for sufficient funds to make the payments in arrears, and future payments. Of the five thousand dollars which the bank had agreed to lend the church, about two thousand five hundred dollars had been advanced up to that time, which the church had paid to appellant on the contract.

The bank had no notice that the building contract provided, under certain contingencies, for extras above the twelve thousand dollars, the contract price. Appellant and Thomas, the contractor, informed the bank that twelve thousand dollars was the contract price for the building, and said nothing about extras. They knew that the bank was not willing to advance the five thousand dollars, and would not have done so, except upon condition that it was to have a first lien on the property as security therefor. When the church defaulted in its monthly payments, and the work was stopped, appellant, through its manager, Vickery, urged the bank to advance the church the balance of the five thousand dollars which it had promised, upon condition that it was secured by a first mortgage on the property. The bank then had before it these facts: That the church had defaulted in its monthly payments on the building contract for something like three thousand eight hundred dollars. The bank knew how much had been paid on the contract; it knew how much the board of home missions had agreed to advance the church, under its trust bond and mortgage, in aid of the construction of the building, and how much had already been advanced thereunder. It was informed as to the probable amount that would be raised by the church from other sources, to pay on the construction of the building. It was informed by the contractor and appel-

lant that the contract price was twelve thousand dollars, not that it was twelve thousand dollars and a further sum for extras. The bank, in view of these facts and circumstances, agreed to advance the balance of the five thousand dollars which it had promised to lend to the church, having reason to believe that by so doing the full contract price for the building, twelve thousand dollars, would be discharged. The balance of the five thousand dollars was advanced, upon the distinct condition that it was to be secured by a first lien on the church property. The entire five thousand dollars lent by the bank to the church was by the latter paid to appellant on the building contract. Situated as the parties were at that time, and, in fact, from the date the building contract was entered into, appellant owed the bank the duty to inform it that the contract price for the building was not twelve thousand dollars alone, but that sum and "extras," amounting to something like one thousand five hundred dollars. In other words, appellant was called upon to inform the bank that if it advanced the balance of the five thousand dollars, the bank's mortgage to secure the amount would not be a first lien on the church property, but that appellant would have a materialman's and mechanic's lien to secure the payment of extras, which lien would be prior to that of the bank.

Appellant and the bank were not dealing at arm's length with reference to these matters. The bank was one of the main sources from which the church was to get the money to pay for the construction of the building. Appellant knew that, and was urging the bank to make the loan, knowing all the time that the bank was not willing to make the loan unless it was secured by a first lien.

In view of all these facts and circumstances, we are of opinion that appellant is estopped, by its silence as to the extras, from claiming priority of its lien therefor over the lien in the bank's mortgage.

From these views it follows that the decree should be reversed as to the board of home missions, affirmed as to the bank, and the cause remanded.

Affirmed in part, reversed in part, and the cause remanded.